The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. All right, good morning, counsel. This is case number 4-23-0191, People v. Martin Walgenbach. Could we have appearances first for the appellant? Good morning, Your Honors. Sarah Vig. Okay, and Ms. Vig, how do you pronounce your client's last name? Walgenbach. Okay, thank you. And for the appellate? Good morning, Your Honor. Claire Connelly on behalf of the State of Illinois. Okay, thank you. Ms. Vig, you may proceed with your argument. Thank you, Your Honor. May it please the court, counsel. Your Honors, if I could, I'd like to reserve a couple minutes at the end for a response to counsel's comments. You may. Thank you. Thank you. Judges, I'm going to keep my comments brief. I want to spend time today, and I want to address sort of what I think are the biggest parts of the State's argument in their brief. The State seems to indicate in their brief two things. One, that Your Honors do not have to believe my client's testimony. And two, that the circumstantial evidence in this case supports the State's version of events in this case. Your Honors, respectfully, with respect to the latter, that is just simply not the case. If we think about this case in terms of circumstantial evidence, what is the circumstantial evidence? So the circumstantial evidence is that there was an accident that happened, and my client left the parking lot. Let's think about then, Your Honors, what are some reasons why, if my client had known he hit an individual, why would he have left that parking lot? What are the reasons? That he's drunk, right? But, Your Honors, the testimony from my client is that he arrived at the boats at 445 that evening, and had two Coors Light beers over the span of four hours, and he stopped drinking at least an hour before the incident occurred. Your Honors, it would have been easy for the State to have gone to his waiter, to the casino, and been like, give us an itemized receipt of everything he had. They didn't do that. The only testimony is my client's. So he's not drunk. Objectively, he's not drunk. So no reason for him to leave the scene of any accident based on that. He's not insured. No evidence that he's not insured. He's not licensed. No evidence that he's not licensed. So any objective reason that he might have had to leave an accident, if he had known he had caused one, it doesn't exist. So what is the circumstantial evidence then? The circumstantial evidence then, Your Honors, is that my client is driving his car on a snowy night, and he hears, he's in the middle of his turn, and he hears a bump, and he stops the car. And I think, Your Honors, that is really something we need to focus on. Because if my client had known he hit an individual, and he was going to leave the scene of an accident, why on earth would he stop his car? There's no reason. If he hits an individual, and he knows it, man, he's going. If he's not going to stop, he's going, because he's going to have, I didn't hear, I didn't know, I didn't see. But that's not what happened. He stopped his car for a full four seconds. And his testimony is, and you can almost hear him in his testimony. His testimony is, I checked my rearview mirror. I checked my side mirrors. I checked my windows. I didn't see anything. I didn't see a person. The state wants to rely on this idea that because he saw Ms. Sierra Vela before she crossed the street, that somehow he saw her at the time of impact. But objectively, Your Honors, that just isn't true, and it's not supported by the evidence in this case. The objective evidence, the objective evidence is that my client did not see her at the time of impact. And we know that not only because of his testimony. It's not just his testimony that the court should credit. But there was an expert, an expert who testified. We took the car out, the very car that Mr. Walgenbeck was driving. Ms. Vick, may I interrupt you for a moment? Yes, please. Before you get to your expert's testimony, critically, one thing that the trial court had that the parties presented was the surveillance video, correct? Absolutely, Judge. And it's very clear that the victim is seen walking in front of your client's car immediately before impact. Is that right? Yes. I mean, obviously, she's walking across his car. Whether or not she's walking across his line of vision, I think that is what nobody can say, right? My client says he didn't see her walking across his car. My client says that he didn't see her, obviously, at the time of impact. My client says, I saw her and, you know, before the incident happened, and I didn't see her again. No matter who you're talking to, three judges here, whoever it might be, everyone who has driven a car before and they see a video that shows a pedestrian crossing in front of a car can make the connection through the inference there. Or the inference can be drawn that that driver would have seen the pedestrian. Unless the driver was doing something within the car and his attention was directed elsewhere. But how is it that, how did you explain to the trial court that he would not have seen the pedestrian directly in front of his vehicle immediately prior to the collision? Is this based solely on the expert's testimony? Is that it? Thank you, Your Honor. I actually was not trial counsel, so I did not have an opportunity to explain this to the trial court. However, I have reviewed the video and the evidence in the case, Judge. And I think that the evidence is simply that my client didn't see her. There was no question. Nobody opposed to my client the question of what were you looking at while you were in the car, right? So there was no testimony about that, either from defense counsel or from the prosecutor during the trial. Right. What the testimony is, is that my client did not see her. He did not see her as he made his turn. That's that's that's clear. Judge, I think that I think that if you look at the experts, the experts report, I think that that can shed some light on it to your honor. So the experts report comes in. I ask you a question before we get to the expert. Certainly, certainly. The fact that your client states, I did not see the victim, I guess we'll call her. Isn't that a self-serving statement? Sure. Sure. Yeah, absolutely. But that is not the prior fact free to disregard that or give it as little weight or as much weight as it deems fit. Yes. But I think that that's where that's where we fall apart here, because it wasn't just my client self-serving statement. It was also the it was also the report and the testimony of the expert, which was unrefuted. And the expert is your client refute a substantial part of the experts report. I'm sorry. Say that again, sir. The expert seems to take a lot of time saying that this woman wouldn't have been seeable because of the conditions, because of her dark clothing. But your client did see. Yeah, he saw her. Yes, he saw her whenever they got to the intersection. Regardless, then the experts were wrong. She's seeable, right? She's it's not as though the conditions are such the lighting was such a clothing was such that she wouldn't be seen, couldn't be seen. She was seen. The issue is whether she was then seen again, either immediately at the time of the impact or immediately thereafter. Yeah. And, yeah, I think that I think, Your Honor, that the expert is talking about after the point of impact. Judge, I think that that's where the experts that's where the experts opinion really is. Right. The impact happens. We can all see that the impact happens. The question is, did my client see the impact? Did he register the impact? Did he know that he hit a person? That's the question. Well, that's not even just that, though. It's not just did he see her at the point of impact? Did he see her crossing in front of his vehicle? Right. You're saying that he denied seeing her crossing in front of his vehicle. And somehow that's explainable. But so far, we haven't heard an explanation for that. How is it that she was invisible to him crossing in front of his vehicle from left to right? I think, Judge, part of it is if you look, he is he's got his side mirror. Right. She's not crossing in front of his windshield. She's crossing along his left driver side mirror. And the testimony was that his windows were still fogged. Remember, it was that cold, sleety night. So he had all of the all of the things on. Right. All of the defrosters were on. But the defroster always defrost that front windshield first. And I believe if I remember his testimony correctly, his mirror, his side windows and his back glass were still fogged at the point that he arrived at that intersection. So I do believe that there is a possibility that he did not he did not see her. In fact, I believe his testimony that he did not see her cross in front of his car. She did cross in front of his car. Right. Cross along his car. I don't I don't know that she crossed in front of in front of that windshield where he would have seen her. Remember, part of the expert's testimony is that when he's making a left turn, his eyes are going to turn to the left. So at the point, excuse me, counsel, we have the video. I just let's let's get let's agree on some facts here. He initially acknowledges seeing her to the left of his vehicle. Correct. Yes. OK. We know from the surveillance video that she is on the left side of his vehicle and ultimately she is struck on the right front of his right front of his car. Correct. We see her on the video crossing in front of his vehicle. Right. Yes, but I don't think that I'm struggling to remember the video, Judge. I think that it was as he was turning. I don't think because of the way his car was, I think no matter the council, no matter what he was doing in terms of operating his vehicle, just from a matter of location, she crossed in front. She would have had to. She would have had to. Thank you. Thank you. Yeah. Yeah. But I think that's part of what the test, the expert's testimony is important for, because it is important where his eyes are during that turn.  His eyes are going to go left. And at the point of impact, she is on the right. So at the point of impact, he does not see her at the point of impact. He doesn't know she's still there at the point. I'm saying let's not concentrate on the point of impact necessarily. What about in the second to two seconds prior to impact where she is crossing? She is walking directly in front of his vehicle. Where is he looking at that point? And how is he not seeing her? Unfortunately, Judge, the record is that nobody ever asked him that question. I don't have an answer to that because nobody ever asked him that question again. I was not. I was not trial counsel. All I can say is that my client's testimony was that he did not see her. He saw her. But then he did not see her when he hit her. That's that was the testimony that we have. Okay. Thank you. Thank you. I think that it is. I think that it is. And it makes sense. Again, the state wants to talk about circumstantial evidence. Judge judges, if he had seen her, if he knew he hit a person, why would he stop his vehicle? Why would he stop his vehicle for four seconds? And then be like, oh, there's the person that I hit. And then drive away. That does not make any sense. What makes sense is first hit and run driver to panic and flee the scene. It does again. Yeah. Again, that doesn't make sense with respect to my client. Judge, my client is a businessman. He is known in that area. Right. He has a reputation to keep. He doesn't want to be known as the guy that hit the person and drove away for sure. And he's a businessman. He's got insurance that's going to take care of all of this. It was an accident. Right. It doesn't it doesn't make any sense that he would have stopped, saw the person and then drove away. If he was going to leave a person there on the ground, what more likely what he would have done is just kept going. There's no reason for him to have stopped. The only reason that he would stop is to check and see, is there is there a person? Did I hit a person? And seeing none. And that's where that's where the expert's testimony is really so important. If he's believed that he saw none. I mean, yes, I mean, that's his testimony, sir. And that's that's consistent with what the expert says. It is unlikely that he would have seen her. There was like point three, five seconds from the point of impact where he might have seen her if he had been looking in that direction. So less than half a second that he might have seen her if he was looking in that direction. He knows he hit something. There is nothing else to be hit. A pedestrian just crossed in front of his car. He saw the pedestrian. But where to put that all together and say that he would have no way of knowing that he just hit a pedestrian. And again, I think that's going to clear. He maybe thought he was going to clear. But he didn't. Again and again, sir. Yes. Again, that's why I think it's so important. This four seconds that he stopped because he's looking again. You can almost see him looking in my rearview mirror, looking at my side mirrors. I'm looking in my back glass. I don't see a person. Right. He stopped and he looked and he didn't see her. Right. If he if he did not intend to get out, he would not have stopped. He stopped. He looked. He didn't see a person. And I think it's just as reasonable an inference to think that she, you know, she walked on. Right. I don't see her anywhere. I would think I would see her on the ground if I had hit her. She's not. I don't see her. She's not in my field of view. She must have gone on across the.  No rational trier of fact could have concluded that he did see her. That he did see her and know that he hit her.  I don't think so. Judge. I don't think so. Not given the testimony that not given the testimony of the expert and given my client's testimony. The only testimony that they that the state has on this is is from Ms. And, you know, and the video itself.  And Ms. I mean, she can't say whether he saw her or not.  And and God love her. I mean, she she had just been hit by a car. Right. She's upset. But she she says things that are not wholly supported by the evidence or or the the the testimony that was presented. For example, she says that he's honking his horn and yelling. Nobody else testifies to that. And they did, in fact, call the the valet one of the valets. They are outside. They're working. They don't say, like, I heard a car horn honking and write people yelling. Right. None of that. And the one person that that came to her aid initially, Connie, she's just absent. They didn't even call her at all. Right. So the only people that could have confirmed that part of her statement are just they didn't either didn't or they weren't called. But it doesn't need to be concerned. It's in evidence. And the jury could believe her. The testimony about the honking. Yeah. But that's what I'm saying. I don't think there's nothing substantiating it. It's just as likely. It doesn't have to be substantiated. The jury could believe her. Yes. The jury could believe it.  Yes.  One, to be clear, is a bench trial, right? It was a bench trial. Yes. It's fine. I understood. I understood what you mean. But the valet and the the witness who came on the scene afterwards, where they asked whether or not a horn was honked. You're just saying it's not in the record. Yes, it's not in the record. And again, that's on the state. The state has the burden. The state has the burden of proving all of that and confirming all of those parts of the story. Counsel, you can't claim that it was testified inconsistently.  The victim's testimony is essentially unroboted. If I if I said inconsistently, I should have said unsubstantiated.  They could have. They could have called witnesses to say, and they could have asked that question. Right. Did you hear a horn honking? They didn't. You are so far from the question that we're wrestling with. I'm sorry. You are so far from the question that we're presented with, which is based on the evidence. Could a rational finder of fact have found the defendant guilty of the offense charge? We're not looking at what other evidence could have been offered. It's the sufficiency of the evidence that was offered. Absolutely. And that is our position. I don't think that they could have, Judge. You know, I understand what your honors are saying. Like, she obviously had to cross the car. Obviously, that had to happen. But the question is, did he know he hit her? The one thing that I agree with the trial judge on is, you know, maybe he got the timing wrong and thought that she already cleared. That is most likely what happened. He thought she already cleared. So when he checks all his mirrors and he does not see her, it corroborates what he already thinks. Well, I thought I'd given her enough time. I obviously did. I don't know what made the noise on my car. Right. But I've stopped. I've checked. I've looked. I didn't see anything. And that's what's important. That's why we keep coming back to the time of impact. He thought he hit a median or a curb. He did say median or curb. Which is not like driving over a pop can in the road, right? I mean, that's an impact. That's what he's describing he felt. The only thing he saw in the proximity of time was this pedestrian who crossed in front of him. Right. And again, judge. You can't a jury look, I'm sorry, can't a finder of fact look at that and say this, he had to have known. Again, judge, I just think given the circumstances, I don't think that they could have, a rational trier of fact, could have convicted on that. Because he did stop and look. He did stop and look. Yes, we all want to say, okay, so the pedestrian, that's the thing. But the lighting conditions are bad. It's sleeting. It's snowing. His windows are fogged. He stops and looks because, you know, she was crossing. He stopped for four seconds. If he had seen her, right, then he gets out. If he is just going to hit and run, he's just going to keep going. But he stopped and looked. And that's what I'm saying. And that's why the expert's testimony is so important. Because the testimony is clear. It is unlikely that he saw her once she hit the ground. And it is unlikely that he saw her during the point of impact. Because of the lighting conditions. Because of the obstructions in the car. Because of where his eyes were naturally looking during his turn. And that's what's important. It's the point of impact.  So you're making inferences. Would that be a fair statement? I think you're making inferences based on the evidence. Yes, Judge. I mean, you're making inferences. And so, if we're talking about inferences that are flowing from the evidence, the trier of fact is not required to disregard all inferences. There's several different inferences that could arise. Like, you are asking us to infer that he did not see her. But couldn't the trier of fact also infer the opposite, as the trier of fact did? I think that whenever it's beyond a reasonable doubt, Judge, sure, they can make inferences. But beyond a reasonable doubt, I don't think you get there on these facts. Because beyond a reasonable doubt, there is a reasonable explanation for why the thing happened the way it did. And I don't think that you get beyond a reasonable doubt based on these facts. Okay. Thank you, Ms. Vick. You'll have time in rebuttal. Ms. Connelly? May it please the Court, Counsel, the evidence when viewed properly in the light most favorable to the scene of an accident which caused personal injury to the victim. It was based upon the victim's credible testimony in this case, which was corroborated by the surveillance video that was omitted into the evidence by the State, as well as the defendant's own admissions. Ms. Connelly, you heard Counsel's argument, and she goes back repeatedly to the timeframe after the impact, several seconds, however many seconds it was, that he was stopped. Tell us why we shouldn't believe or buy into that argument that the timeframe, the amount of time that passed, should lead to the conclusion that that meant he didn't know that he had hit a pedestrian. Well, that's like looking at it backwards, in my mind. So what we have to look at is everything that's leading up to that point. Up to that point, prior to the crash, you have the victim testifying that she looked over and she made eye contact with the defendant and was able to make an in-court identification of the  You have the victim's own concession in this case that he looked over through his windows and he was able to see the victim standing there next to him on his driver's side window, standing there waiting. Both of them were waiting to cross that street. Now, if you notice when he was there, he could have either gone straight or turned and he did not have from the surveillance video, there was no testimony, but from the surveillance video you can see that he did not have his turn signal on. So both of them decided we're waiting for the other one to go first. The victim decided to proceed through the intersection at that point. So he's aware that there's a pedestrian right there within feet of his car. And then as she proceeds through the intersection, he hit her between the center and the passenger side. So when he hits her at that impact, he's already made that turn. He has his headlights on. His headlights illuminate the victim right in front of that car. Now he knows that he has hit someone. He concedes, I should say, I apologize that he has hit some, something. He does not concede that he knows that he has hit someone. He knows that he heard something and that he felt something. Did he also testify that he thought that he hit an Island or a median, but then on cross-examination indicated that he did not see an Island or a median? Absolutely. That was one of the things I was going to point out to your honors. So this is the excuse that he gave. He said, I hit something. He thought he had hit a median or an Island in this case. Now it's reasonable when someone would hit an Island or a median that would cause the car to jerk up or try to get over the median or the Island or stop the path of the car. That's not what happened in this case. And you can, And he never testified that that's what happened to his car. And the surveillance video shows that that's not what happened to his car in this case. In fact, what happened was he hit the victim who flew up onto the, the hood of his car. And you can see that from the surveillance video, the victim says, I went flying. And the surveillance video shows that she flew on top of the hood of his car with his, with her head, Nearly touching the passenger side front windshield in this case. And then she fell down onto the passenger side of his car. So all of that, you also have to look at the fact that there was a lot of testimonies, whether or not the defendant could see that day. And he presented an expert testimony to show that it was basically the, the he, the expert surmised that it would have been challenging for the defendant to be able to see the victim that night based upon the conditions of the weather and the road conditions. But the, the, the expert in this case did not test testify that it was not impossible for the defendant. To have seen the victim in this case. And the, and the defendant actually, I think in his testimony contradicted some of the testimony from the expert in this case, because he conceded that he was able to see outs out of the front window of the car when he made that turn. So, you know, there are three important concessions by the defendant in this case, he admitted that he saw the victim standing there prior to the, the progression through the intersection. He conceded that he was able to see out of the front of the window when he made the turn. And he knew that he had hit something that night and he heard a noise and he felt a bump. All of this shows the defendant's knowledge in this case, then he knows that he knew that he had hit some one and not something. Now, the other thing I'd like to address is counsel suggested that the state has to establish why the defendant didn't stop that night and suggest that there was there was no evidence that he had been drinking or some other explanation for this. He was not charged with any other offense. He was not charged with a DUI. He was not charged with a failure to for proof of insurance. He was solely charged with leaving the scene of an accident that it caused personal injury. So why he decided to do this, I don't know. And that's not for this court to determine in this case, that's not an element of the offense that the state has to prove. All the, all the state has to prove is the elements that are outlined in the statute. And that statute doesn't ask to the state to, to establish why the defendant didn't didn't stop. There could be a multitude of reasons. And that's not what we need to establish in this case at all. And the fact that he just momentarily stopped in this case, obviously he stopped momentarily because he had hit someone or as he said, something, and perhaps it startled him in this case. And he momentarily stopped and he said, I looked around and I didn't see anyone. Now I don't have any evidence to suggest that he saw some of the victim laying on the ground, but we don't need that evidence because we have all this other evidence leading up to that point to establish the defendant's guilt in this case. Counsel also talks about, I'm sorry, justice. I can't hear you. Sorry. If the standard were new or should have known, I think it'd be easy to piece together. The should have known. There was a pedestrian. You saw the pedestrian. You turned, you hit something, knew you hit something. Even if you didn't see that it was the pedestrian, you should have known, but that isn't the standard, right? We have to show that he did know. Is the evidence clear enough to show that even though he had seen the pedestrian before that he had struck the pedestrian? Yes, I think absolutely. Because I think when you have the victim's testimony and the defendant's concessions in this case, because he's, his, his defense was I couldn't see out of the front door, out front the front and the condition, the weather conditions, the expert testimony, the visual clutter that the expert talked about in this case, but that's all defeated by the defendant's testimony in this case that he could see outside the front window of the, of the vehicle. In this case, all of that evidence clearly shows that the defendant had knowledge that he had caused personal injury. He knew he had hit something. Well that there was nothing else that impeded his line of going forward in this case. The only thing that could have in this case was the victim because the victim was the one who was standing right there at the time. That's what I mean about that sounding like he should have seen her. How does that get to the point of saying he did see her? He did see her. Well, it's all obviously in any case like this, unless the defendant is going to admit, I saw her, which they're not going to, it's always going to be based upon circumstantial evidence. And so the state, the evidence that was presented by the state in this case provided enough evidence to establish the defendant's knowledge. All of that added up. And you also have to consider the evidence in the light most favorable to the prosecution in this case. And what the defendant has, the burden in this at this juncture is to show that the evidence was so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt and simply cannot establish that this is, this is what we're doing, that the evidence, the trial court found that evidence was sufficient to establish the defendant's knowledge. And we, and we can see what it does. The one other thing I wanted to address was counsel's reference to the evidence regarding the car honk, the car horn honking. Now the victim testified that she heard when she was on the ground after she had been hit that she heard a car horn honking at that point. Now there was talk about whether or not there was any other evidence. And the only other evidence that I recall from the record in this case is that the defendant's wife, Julie was asked about the car honking and she testified that she did not hear any car honking. That was the only other evidence. But again, that's all for the, for the trier fact, the trial court in this case to make a determination as to whether or not that had an impact in, in, in its decision. And when you look at the trial court's findings in this case, the trial court didn't even mention anything that had to do with the, the honking of any car horn. So based upon all of this, we respectfully request that the defendant's conviction for leaving the scene of an accident involving personal injury be affirmed in this case. Thank you. Right. Thank you, Ms. Connelly. Ms. Vig, rebuttal argument. Thank you, judge. I'd just like to take a minute to, to acknowledge a couple of things. One, and Ms. Connelly sort of hit on it in her discussion. I think that the trial court's findings are actually super important to your honor's determination in this case, because the trial court is not clear, right? That the trial court knew that my client knew he had hit a person. He's the trial court says, had he, did he stop? Had he gotten out? Had he noticed he could have, right? The trial court is not clear in its own findings that it knew beyond a reasonable doubt that my client knew that he hit a person. And I think your honors that justice Doherty makes an, an, an excellent point. And that is that it's important what he knew at about the accident, right? Ms. Connelly wants to argue about, well, you know, he saw her. And so it must've necessarily been her, but I don't think that that is supported by the evidence. Your honors, the evidence supports that. Yes, he saw the person, but then you see him stop and you say, I, you can tell you, I mean, obviously he's stopping. He's looking. He does not see the person. The expert says it's unlikely that he saw the person. It's unlikely that he saw the person at the point of impact. So how can he know that he's hurt somebody? Yes. He says he hit a median, but when he looks, he does not see objectively anything that he hit. And so he continues on. And that is the reason that we bring up the, the lack of injury to the vehicle in this case, right? The car doesn't register this. The video is the video is dramatic, right? It is it's dramatic, but the car does not register that impact the same way the person does. Obviously there was no damage to the car. So what, what Mr. Walgenbach's experience of this situation was, was very different from Ms. Sierra, Sierra Velas. I'm sorry. I know. I just, I misstated her name, but I think, and that is, that is, that's the crux of it. That's the crux of it. Did he know he had caused an injury? Even the trial court says, did he, had he, he could have, right? Let's be clear on that. The trial court said, the fact of the matter is he hit someone. He knew he hit someone. He does like after, after he says, did he had, he could have then, then yes, he says that, but in his reasoning, in his reasoning, it is certainly not clear from his reasoning that, that he hadn't, that he knew he had hit somebody, right? If you read the whole, if you read the whole findings from the court, the trial court is not clear in those findings. Is he, had he, did he, could he, he could have maybe, you know, he could have gotten out and looked, right? That's what the trial court says. The trial court says, and tell that very last paragraph, when he decides to convict my client, the trial court doesn't make any of those findings. The trial court is actually equivocating on those issues. Had he done this. But then he does make the finding. Ultimately he does. But I think that his reasoning leading up to that is important because his reasoning shows what his thought process was. And his reasoning shows that this is not beyond a reasonable doubt. The fact that my client knew he hit a person and that's what has to be beyond a reasonable doubt that my client knew he hit a person, even considering everything in the light, most favorable to the state. There is not, there is insufficient evidence for a rational trial fact to find that my client knew he hit a person again, because he stops and looks and he doesn't see a person. He doesn't see a person. And that is not just my client say giving self-serving testimony and expert confirms. Yeah. Unlikely that he saw a person given the lighting conditions, given where his eyes naturally were given the, the occlusion in the car, it is unlikely. There was less than half a second when he might've seen her. And I understand, I understand again, we're all, everybody wants to say, well, you know, there was a person walking and then he felt a bump, but your honors, again, he thinks he's given her enough time to get by. So when he, when he feels he hears the bump and he stops and looks his, his own thought about what happened is confirmed, right? It is affirmed, right? I didn't hit a person. I must've been right. I must've got the timing right. And she must've gone on because I don't see anybody. I don't see a person here. We would ask that the, that your honors reverse this conviction. There was no, no rational trier fact could have, could have convicted based on the knowledge element, your honors. There's just simply not there. Okay. Thank you. Counsel. Thank you both. The court will take the matter under advisement and we'll issue a written decision. The court stands in recess.